# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

**TAMMY S. HOLDEN,** ]
]
    **Plaintiff,** ]
]
**v.** ]    **Civil Action No.:**
]    **3:16-cv-00981**
**CITY OF SHEFFIELD,** ]
]
    **Defendant.** ]

## MEMORANDUM OPINION

Plaintiff Tammy Holden sued Defendant City of Sheffield after it terminated her employment. Ms. Holden's complaint contains two counts.[1] In the first count, Ms. Holden alleges that the City violated her procedural due process rights under the United States Constitution by failing to provide her a fair and impartial hearing. In the second count, Ms. Holden claims the City violated her substantive due process rights under the United States Constitution because its decision to fire her was groundless or incorrect. Because Ms. Holden fails to state either a procedural or substantive due process claim, the court **GRANTS** the City's motion to dismiss her complaint.

**I.    BACKGROUND**

To support Ms. Holden's due process claims, she provides these facts in her complaint.[2]

---

[1] Ms. Holden's second amended complaint states that it "incorporates all the allegations in the initial complaint filed in the Colbert County Circuit Court and the Amended Complaint alleging violation of her due process." Originally, Ms. Holden's complaint contained due process claims arising under the Alabama Constitution. However, Ms. Holden's counsel clarified at the scheduling conference held on August 30, 2016 that she was now not asserting any state law claims and that the only two counts of the second amended complaint were for violation of her due process rights under the United States Constitution.

[2] Ms. Holden attached a transcript of the City Council's hearing on her termination as well as the City's notice of termination to her second amended complaint. Under Fed. R. Civ. P. 10(c), such attachments are considered to be part of the pleadings.

Ms. Holden worked in the City's Street and Sanitation Department for more than a decade as an administrative assistant. For the vast majority of that time, Ms. Holden's supervisor was her husband, Robert Holden. However, Bradley Bump became her supervisor on October 14, 2015.

At Ms. Holden's termination hearing, Mr. Bump testified that the city council had asked him to address two issues with Ms. Holden when he assumed his new position. First, the council asked Mr. Bump to address the shorts Ms. Holden was wearing to work because they were believed to violate the department's dress code policy and to be inappropriate for the workplace. Second, the council asked Mr. Bump to address Ms. Holden's accumulation of "comp time" during her lunch break for monitoring the phone line. Ms. Holden was no longer required to answer the phone during her lunch hour as she previously had done because the department installed a new system that could take messages.

On November 12, 2015, the City provided notice to Ms. Holden it was suspending her with pay from her position pending a hearing, and that the Mayor was recommending she be terminated. The notice charges that Ms. Holden refused to carry out orders and engaged in both insubordination and gross insubordination. To support these allegations, the notice cited seven specific instances by date.

The notice states that when Mr. Bump confronted Ms. Holden about the comp time issues, she was "unfriendly" and "antagonistic" towards him, and questioned who told him to talk to her. When Mr. Bump raised the comp time issue again with Ms. Holden a few days later, the notice alleges Ms. Holden reacted "aggressively" and accused Mr. Bump of not trusting her. The notice also charges that after being told her shorts were inappropriate for work, Ms. Holden wore them again. Mr. Bump sent her home to change.

The notice also accuses Ms. Holden of being uncooperative in helping Mr. Bump access to

a computer record containing Ms. Holden's comp time sheet. When Ms. Holden requested the day off, Mr. Bump asked her for the password to access department computer files. The notice says Ms. Holden was reluctant to give it to Mr. Bump and questioned his authority. Further, the notice says Ms. Holden later changed the password without informing Mr. Bump. When Mr. Bump confronted Ms. Holden, the notice says she was again disrespectful towards him.

On November 30, 2015, the City Council met and held a hearing on whether Ms. Holden should be terminated. William J. Underwood, Ms. Holden's counsel in this case, also represented her at the hearing. Several witnesses testified, including Mr. Bump and Ms. Holden. Ms. Holden's counsel cross-examined the City's witnesses and called witnesses of her own to support her case. Ms. Holden also submitted evidence to the tribunal, including her text message conversations with Mr. Bump and pictures of the shorts she had worn to work on the day she was sent home.

However, Ms. Holden was not permitted to call Mayor Ian Sanford as a witness. Ms. Holden moved for the Mayor to recuse himself from the proceeding because he was biased and be called as a witness. Ms. Holden claims that the Mayor had told her that her shorts were an acceptable length and that he had sent Ms. Holden "scandalous emails." The City Council denied the motion.

Ms. Holden filed another motion claiming she lacked noticed about what constituted "gross insubordination," as it was not defined in the City's employment manual. The motion argued that Ms. Holden could at most be charged with insubordination, which under the City's gradual-discipline policy, required a warning prior to termination. Ms. Holden argued the vagueness of "gross insubordination" violated her due process rights to be placed on notice of the charges against her. The City Council also denied this motion.

After conferring in executive session following the hearing, the City Council voted

unanimously to terminate Ms. Holden from her position with the City.

## II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. The Federal Rules of Civil Procedure require the complaint to provide "a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(1). A plaintiff must provide the grounds of his entitlement, but Rule 8 rarely requires "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. If the court determines that well-pleaded facts, accepted as true, state no plausible claim, the claim must be dismissed. *Id.*

## III.    DISCUSSION

Ms. Holden's complaint alleges that the City violated both her procedural and substantive due process rights. As discussed below, neither of these counts states a claim for relief.

### A.     Substantive Due Process Claim

Substantive due process only protects fundamental rights. Public employment is not "so fundamental that our democratic society and its inherent freedoms would be lost if that right were to be violated." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1993) (en banc). A federal district court "is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* at 1559–60 (quoting *Bishop v. Wood*, 426 U.S. 341, 349–50 (1976)). Accordingly, public employees' *substantive* due process claims regarding their termination are not cognizable in federal court. Instead, "only *procedural* due process claims are

available to pretextually terminated employees." *Id.* at 1561(emphasis added).

Ms. Holden attempts to distinguish the facts of *McKinney* from her case. *See* (Doc. 21 at 5). While the employee in *McKinney* offered extensive evidence, Ms. Holden was prohibited from calling the City's mayor, whom she believed to be a material witness. However, if the City provided defective due process by limiting the evidence she could offer, that defect would be *procedural* rather than *substantive*. A substantive right is protected against state action regardless of the process afforded. *See Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Here, Ms. Holden's claim is not that the City may not terminate her employment under any circumstances, which certainly would not be viable, but rather that it could not terminate her under *these circumstances* with the process it afforded her. Therefore, Ms. Holden's claim sounds in procedural rather than substantive due process.

Ms. Holden relies on a Third Circuit case for the proposition that "substantive due process can be a cause of action if it is shown that the government's actions in a particular case were in fact motivated by bias, bad faith, or improper motive." (Doc 21 at 5) (citing *Homar v. Gilbert*, 89 F.3d 1009 (3d. 1996)). Ms. Holden's reliance on *Homar* is misplaced for two reasons. First, this court must follow *McKinney* because the case is binding en banc precedent of the Eleventh Circuit. Second, the Third Circuit, echoing *McKinney,* has clarified that a public employee enjoys only procedural, and not substantive, due process protection from pretextual termination. *See Nicholas v. Penn. State Univ.*, 227 F.3d 133, 142–43 (3d. Cir. 2000). Therefore, *Homar* is unpersuasive to the court.

Because Ms. Holden's interest in public employment does not enjoy substantive due process protection, the court **GRANTS** the City's motion to dismiss the claim.

  **B.**  **Procedural Due Process Claim**

The court now considers whether Ms. Holden's complaint states a claim for violation of her right to procedural due process. For the purpose of this motion, the City does not dispute that Ms. Holden is a public employee with a protected property interest in her position. If a municipality fails to offer an employee *any* hearing, the employee's due process rights have been violated *even if* an adequate post-deprivation remedy exists. *See Haddler v. Walker Cnty., Ala.*, No: 6:14–CV–00586–LSC, 2014 WL 2465322, * 4 (N.D. Ala. May 30, 2014) (noting if a plaintiff pleads sufficient facts to "suggest that [s]he was denied any pre-termination hearing, [s]he could state a violation of a clearly established constitutional right"). Ms. Holden is entitled to both pre-termination and post-termination due process, and separate inquires must be made into her claims as different standards apply at each stage. The court will consider each in turn.

1. **Pre-termination Due Process**

Before a public employee with a protected property interest in her job is terminated, due process requires "some kind of hearing." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 (1985). This initial hearing may be "very limited," as long as a "comprehensive post-termination hearing" follows it. *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). The pre-termination hearing serves as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545–46. All due process requires for the first hearing is "oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." *Homar*, 520 U.S. at 929. The hearing does not have to be a "mini-trial." *McKinney*, 20 F.3d at 1561.

Here, the City provided Ms. Holden a hearing. The question is whether the hearing

satisfied the requirements imposed by *Loudermill*. Ms. Holden received notice of the charges against her (including specific factual allegations to support the charges); the City provided Ms. Holden an explanation of its evidence against her at the hearing; and Ms. Holden was represented by counsel at the hearing and could offer her own evidence and cross-examine witnesses—the notice, explanation, and opportunity to respond *Loudermill* requires. *See Homar*, 520 U.S. at 929.

Granted, Ms. Holden could not call the Mayor to testify. However, because the due process requirements of the initial hearing are "very limited," such a restriction does not constitute a violation of the pre-termination due process owed Ms. Holden. *See id.*; *see also McKinney*, 20 F.3d at 1561 ("That hearing is not a mini-trial."). Ms. Holden was not entitled to an adversarial, full evidentiary hearing before she was removed from her position. *See Loudermill*, 470 U.S. 532 at 545–46 (noting that the Court has never required "a full adversarial evidentiary hearing" before terminating a public employee). Rather, the alleged procedural defect would only become a violation of due process if the state fails to provide a *post*-termination remedy. *McKinney*, F.3d at 1562.

Ms. Holden also claims she was denied due process at her initial hearing because she was charged with "gross insubordination," but was not provided a definition of that tern. Accordingly, Ms. Holden claims she could not present a meaningful defense to the charges levied against her. However, the notice provided detailed descriptions of particular incidents that supported its complaint against her, and Ms. Holden provided evidence to rebut the notice's charges. Therefore, Ms. Holden was fairly placed on notice of what conduct formed the basis of the mayor's recommendation to the City Council that she be terminated. Again, such notice is sufficient to satisfy the limited due process requirements imposed upon the initial hearing. *See Loudermill*, 470 U.S. 532 at 545–46. Therefore, the court finds that the City's pre-termination hearing satisfied due

7

process.

### 2. Post-termination Due Process

The court now considers whether Ms. Holden was afforded adequate post-termination due process.

If an employee believes that a decisionmaker at her initial hearing is biased, she must "contemporaneously object" to preserve the issue. *McKinney*, 20 F.3d at 1562. However, "[a] demonstration that the decisionmaker was biased . . . is not tantamount to a demonstration that there has been a denial of procedural due process." *Id*. Due process is only violated if the state fails to provide an adequate means to redress the alleged bias. *Id*. Accordingly, "even if [the employee] suffered a procedural *deprivation* at the hands of a biased Board at [her] termination hearing, [she] has not suffered a *violation* of [her] due process rights unless and until the [s]tate . . . refuses to make available a means to remedy the deprivation." *Id*. at 1563.

Ms. Holden's complaint may state a claim for procedural *deprivation*, but it does not establish that the City *violated* her procedural due process rights. The state provided Ms. Holden a remedy to address her grievances with the initial hearing; Alabama law permits Ms. Holden to seek review of the City's decision via a writ of certiorari filed in state circuit court. *See, e.g., Ex parte City of Tuskegee*, 447 So. 2d 713 (Ala. 1984) (reviewing decision of city council to discharge police officer). Therefore, the state has provided a remedy to Ms. Holden to correct the alleged procedural defects in her termination hearing. Because such a remedy is available, the City has not infringed Ms. Holden's right to procedural due process.

Ms. Holden questions the adequacy of this remedy. Noting that *McKinney* arose out of Florida law where circuit courts are empowered to conduct a near de novo review of municipal employment decisions, Ms. Holden seeks to distinguish *McKinney* because Alabama state courts

have a much more limited standard of review than the practically de novo standard utilized by Florida courts. However, the Eleventh Circuit has rejected this precise argument. *See Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir. 1996) (finding Alabama's certiorari remedy sufficient because it empowered circuit courts to "review employment termination proceedings to determinate whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process."). Having a limited scope or standard of review does not render Alabama's certiorari remedy inadequate.

Ms. Holden also argues that she cannot be afforded an adequate remedy without the Mayor's testimony. Alabama circuit courts have the power to ensure that the pre-termination proceeding comported with procedural due process, and a circuit court could remedy the alleged procedural deprivation by ordering a new hearing be held. *See Bell*, 86 F.3d at 192.

Finally, Ms. Holden contends that she is not challenging the bias of the City Council per se, but rather is contesting its application of the employment manual and its reasoning. Ultimately, this argument is truly a substantive due process claim. In essence, Ms. Holden challenges the outcome of the proceeding, not the procedure afforded her. As the court has already found that Ms. Holden's property interest in public employment is not afforded substantive due process protection, this argument also fails to state a ground upon which this court can grant relief.

### C.     Request for Remand

Ms. Holden requests that if the court finds her "procedural due process claim not actionable . . . [it be] remanded back to the Circuit Court of Colbert County, Alabama." (Doc. 21 at 10). To support her request, Ms. Holden cites to a New Mexico district court case. *See Abreu v. New Mexico Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1243 (D.N.M. 2011). In *Abreu*, the plaintiff had alleged *both* state and federal claims. When the court dismissed the federal claims,

9

it elected to remand the state law claims. Here, however, Ms. Holden has alleged *only* federal claims. Having found Ms. Holden's federal claims fail to state claims for relief, nothing remains to remand to state court.

### IV.  CONCLUSION

Because neither count of Ms. Holden's complaint states a claim upon which this court can grant relief, the court **GRANTS** the City's motion to dismiss her complaint and dismisses both counts **WITH PREJUDICE**. The court will enter a separate order accompanying this opinion.

**DONE** this 4th day of January, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE